IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JOSEPH LEON JENKINS,                    §
                                        §
        Petitioner,                     §
                                        §
V.                                      §        CIVIL ACTION NO. H-09-0306
                                        §
RICK THALER, TEXAS                      §
DEPARTMENT OF CRIMINAL                  §
JUSTICE, CORRECTIONAL                   §
INSTITUTIONS  DIVISION,                 §
                                        §
        Respondent.                     §

## MEMORANDUM AND RECOMMENDATION GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

Before the Magistrate Judge in this proceeding brought pursuant to 28 U.S.C. § 2254 is Respondent's Motion for Summary Judgment (Document No. 15) against Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1).   Having considered the motion, the response in opposition (Document No. 17), the claims raised by Petitioner in his § 2254 Application (Document No. 1), the state court records, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Respondent's Motion for Summary Judgment (Document No. 15) be GRANTED, that Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1) be DENIED, and that this case be DISMISSED WITH PREJUDICE.


## I.      Introduction and Procedural History

Joseph Leon Jenkins ("Jenkins") is currently incarcerated in the Texas Department of Criminal Justice, Correctional Institutions Division, as a result of a 2006 felony conviction in the 85th District Court of Brazos County, Texas, for burglary of a habitation with intent to commit aggravated assault,

Cause No. 05-01101-CRF-85.  On February 17, 2005, Jenkins was charged by Indictment in the 85th District Court of Brazos County, Texas, with aggravated assault with a deadly weapon.  On April 21, 2005, he was re-indicted on a charge of burglary of a habitation with intent to commit aggravated assault.  Jenkins pled not guilty and proceeded to trial.  On March 24, 2006, a jury found Jenkins guilty of burglary of a habitation with intent to commit aggravated assault, and sentenced him to twenty-one years incarceration.

Jenkins appealed.  In an unpublished order entered on November 7, 2007, Texas' Tenth Court of Appeals rejected Jenkins' sufficiency of the evidence and speedy trial claims, and affirmed his conviction.  Jenkins did not file a petition for discretionary review.  He did file a state application for writ of habeas corpus on May 27, 2008, but that application was denied by the Texas Court of Criminal Appeals on September 17, 2008, on the findings of the state trial court without a hearing.

Jenkins filed his § 2254 application for writ of habeas corpus on or about January 21, 2009 (the date the application was signed by Jenkins).  Respondent has filed a Motion for Summary Judgment (Document No. 15), to which Jenkins has filed a response in opposition (Document No. 17).  This § 2254 proceeding is ripe for ruling.

II. **Claims**

Jenkins raises three claims in this § 2254 proceeding:

1.      that he was denied a speedy trial in violation of his Sixth and Fourteenth Amendment rights;

2.      that the indictment pursuant to which he was conviction was void and/or invalid; and

3.      that his trial counsel was ineffective for: (a) failing to assert the defense of self-defense; (b) failing to challenge the State's exclusion of Blacks from the

jury; (c) failing to challenge the indictment; and (d) failing to request jury instructions on availability of parole in "aggravated" cases.

Respondent argues in the Motion for Summary Judgment that Jenkins failed to raise with the state courts the entirety of his challenge to the indictment (claim 2), and his complaints about counsel's failure to challenge the exclusion of Blacks from the jury (claim 3b), counsel's failure to adequately challenge the indictment (claim 3c), and counsel's failure to seek an instruction on the availability of parole in an "aggravated" case (claim 3d).  Respondent maintains that these claims which were not raised with the state courts are unexhausted and procedurally barred from review herein.  As for the claims that have been exhausted, Respondent maintains that no relief is available to Jenkins under 28 U.S.C. § 2254(d) because the state courts' rejection of the claims is not contrary to or an unreasonable application of clearly established federal law.

## III.   <u>Standard of Review</u>

### A.   **Exhaustion and Procedural Bars**

Federal habeas corpus petitioners are required to exhaust their available state law remedies. *Deters v. Collins*, 985 F.2d 789, 795 (5ᵗʰ Cir. 1993).  In order to exhaust state law remedies, Texas prisoners must fairly present their claims to the highest state court, the Texas Court of Criminal Appeals, TEX. CODE CRIM. PROC. ANN. art. 44.45, through a petition for discretionary review and/or a state application for writ of habeas corpus.  TEX. R. APP. P. 68; TEX. CODE CRIM. PROC. ANN. art. 11.07, et seq.  "'It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made.'"  *Ex Parte Wilder*, 274 F.3d 255, 259-260 (5ᵗʰ Cir. 2001) (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982)).  Rather, the petitioner must have presented the highest state court with the same claim, the same factual basis for

3

the claim, and the same legal theory in order to meet the exhaustion requirement. *Id.* "[F]leeting reference to the federal constitution," especially when such reference is not accompanied by any federal case law authority, generally does not suffice to "alert and afford a state court the opportunity to address an alleged violation of federal rights," and that "vague references to such expansive concepts as due process and fair trial" in a state court proceeding will not satisfy the exhaustion requirement. *Id.* at 260.

When unexhausted claims are contained in a § 2254 application, and when such claims, if the petitioner tried to exhaust them in state court, "would be barred by the abuse-of-the-writ doctrine of Article 11.071 of the Texas Code of Criminal Procedure," the claims should be dismissed with prejudice as procedurally barred. *Horsley v. Johnson*, 197 F.3d 134, 137 (5th Cir. 1999); *see also Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) ("A procedural default also occurs when a prisoner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'"), *cert. denied*, 523 U.S. 1139 (1998). Only when the petitioner makes a colorable showing that his unexhausted claims would be considered on the merits by the state courts if he attempted to exhaust them, should the claims be dismissed without prejudice. *Horsley,* 197 F.3d at 136-137.

## B.       § 2254(d)

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a claim presented in a federal habeas corpus proceeding has already been adjudicated on the merits in a state proceeding, federal review is limited. 28 U.S.C. § 2254(d) provides:

(d)   An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any

claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"For purposes of 28 U.S.C. § 2254(d)(1), clearly established law as determined by [the Supreme] Court 'refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision.'"  *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

"[A] decision by a state court is 'contrary to' [the United States Supreme Court's] clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" *Price v. Vincent*, 538 U.S. 634, 123 S. Ct. 1848, 1853 (2003) (quoting *Williams*, 529 U.S. at 405-406).  A state court decision involves an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.  But "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.  Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner.'" *Price*, 538 U.S. at 641 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25, 123 S. Ct. 357 (2002)).

5

As for factual issues, "the AEDPA precludes federal habeas relief unless the state court's decision on the merits was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" 28 U.S.C. § 2254(d)(2) (2000). In addition, the state court's factual determinations carry a presumption of correctness; to rebut them, the petitioner must present clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1) (2000). *Smith v. Cockrell*, 311 F.3d 661, 667 (5th Cir. 2002), *cert. dism'd,* 124 S.Ct. 1652 (2004).

Under § 2254(d), once a federal constitutional claim has been adjudicated by a state court, a federal court cannot conduct an independent review of that claim in a federal habeas corpus proceeding. Rather, it is for the federal court only to determine whether the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, and whether the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Woodford*, 534 U.S. at 27 ("The federal habeas scheme leaves primary responsibility with the state courts for these judgments and authorizes federal-court intervention only when a state-court decision is objectively unreasonable."). Whether a federal habeas court would have, or could have, reached a conclusion contrary to that reached by the state court on an issue is not determinative. In addition, the correctness of the state court's decision is not determinative. As instructed by the Supreme Court in *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 2535 (2003), "[i]n order for a federal court to find a state court's application of our precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. . . . The state court's application must have been 'objectively unreasonable.'" (citations omitted). Moreover, it is the state court's ultimate decision that is to be reviewed for reasonableness, not its reasoning. *Neal v. Puckett*,

286 F.3d 230, 244-46 (5th Cir. 2002), *cert. denied*, 537 U.S. 1104 (2003); *Pondexter v. Dretke*, 346 F.3d 142, 148-9 (5th Cir. 2003), *cert. denied*, 541 U.S. 1045 (2004).

## IV.    Discussion

### A.    Exhaustion and Procedural Bars

A review of the record clearly reveals that Jenkins did not raise with the Texas courts his complaints about counsel's failure to object to or challenge the exclusion of Blacks from the jury, and counsel's failure to seek a jury instruction on the availability of parole in an "aggravated" case. Those ineffectiveness claims (claims 3b and 3d) are therefore unexhausted. In addition, because those claims would be dismissed as an abuse of the writ if they were raised by Jenkins in a second/subsequent state application for writ of habeas corpus, the claims are procedurally barred from review in the state courts and are procedurally barred from review herein.

As for Jenkins' claims about the validity of the indictment (claim 2) and counsel's failure to challenge the indictment as invalid or void (claim 3c), these claims, upon careful consideration of the state court records, were *fairly* presented to the Texas Court of Criminal Appeals, and therefore have been exhausted. Jenkins did not challenge the validity of the indictment in his direct appeal, but he did raise the issue in his state application for writ of habeas corpus. In addition, his ineffectiveness claim related to the validity of the indictment was raised in his state application for writ of habeas corpus. While Respondent argues that Jenkins' failure to mention or refer to Article 27.08 of the Texas Code of Criminal Procedure in his state application for writ of corpus renders his challenges to the indictment unexhausted, the exhaustion requirement should not be applied so strictly. Jenkins did fail to make reference to Article 27.08 of the Texas Code of Criminal Procedure in his state

application for writ of habeas corpus.  However, the claims asserted by Jenkins relative to the validity

of the indictment and the allegations in support thereof are the same claims and allegations as are at

issue herein.  Jenkins' failure to refer to Article 27.08 of the Texas Code of Criminal Procedure

should not, in and of itself, render unexhausted Jenkins' claims about the validity of the indictment.

### B.      Merits Review under § 2254(d)

#### 1.      Speedy trial claim (claim 1)

In his primary claim, Jenkins complains that he was denied a speedy trial in violation of his

Sixth and Fourteenth Amendment rights.  According to Jenkins, he was in custody awaiting trial for

over thirteen months, during which time a key defense witness died.

Jenkins raised his speedy trial claim with the state trial court in a motion to dismiss, with the

Texas Court of Appeals in his direct appeal, and with the Texas Court of Criminal Appeals in his state

application for writ of habeas corpus.  With respect to the motion to dismiss, the state trial court held

a hearing on the motion prior to trial and then perfunctorily denied the motion on the record.  On

appeal, the Texas Court of Appeals considered the issue closely, citing to controlling Supreme Court

precedent, and weighing the relevant factors.  In rejecting the speedy trial claim, the Texas Court of

Appeals wrote:

> SPEEDY TRIAL.  In Jenkins's third issue, he contends that the trial court erred
> in overruling Jenkins's "Motion to Dismiss (Constitutional Right to a Speedy Trial)."
>
> "In all criminal prosecutions, the accused shall enjoy the right to a speedy . .
> . trial . . . ." U.S. CONST. amend. VI; *see* TEX. CONST. art. I, § 10.  "In reviewing the
> trial court's ruling on appellant's federal constitutional speedy trial claim, we apply
> a bifurcated standard of review: an abuse of discretion standard for the factual
> components and a *de novo* standard for the legal components." *Zamorano v. State*,
> 84 S.W.3d 643, 648 (Tex. Crim. App. 2002) (citing *State v. Munoz*, 991 S.W.2d 818,
> 821 (Tex. Crim. App. 1999)); *accord Kelly v. State*, 163 S.W.3d 722, 726 (Tex.

Crim. App. 2005).  Where the "appellant lost in the trial court on his speedy trial claim, we must presume the trial court resolved any disputed fact issues in the State's favor, and we must also defer to the implied findings of fact that the record supports." *Zamorano* at 648 (citing *Munoz* at 821); *see Kelly* at 726-27.  "An appellate court reviewing a trial court's ruling on a motion to dismiss for want of a speedy trial must do so in light of the arguments, information, and evidence that was available to the trial court at the time it ruled."  *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003); *accord Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003).

"In determining whether a criminal defendant has been denied his federal or state constitutional right to a speedy trial, a court must use a balancing test in which the conduct of both the State and the defendant are weighed." *Shaw*, 117 S.W.3d at 888; *see Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Kelly*, 163 S.W.3d at 724, 726. "[S]ome of the factors which courts should assess in determining whether a particular defendant has been deprived of his right" to a speedy trial are: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker* at 530; *see Shaw* at 889.

"The first factor, the length of the delay, is measured from the time the defendant is arrested or formally accused." *Shaw*, 117 S.W.3d at 889 (citing *United States v. Marion*, 404 U.S. 307, 313 (1971)).  "The length of the delay is to some extent a triggering mechanism." *Barker*, 407 U.S. at 530.  "[A] speedy trial claim will not be heard until the passage of a period of time that is *prima facie* unreasonable under the circumstances." *Shaw* at 889 (citing *Doggett v. United States*, 505 U.S. 647, 651-52 (1992)).  "In general, delay approaching one year is sufficient to trigger a speedy trial inquiry." *Id.* (citing *Doggett* at 652 n.1).  "If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Id.* (quoting *Doggett* at 652).  "[T]he State [i]s entitled to a reasonable period in which to prepare its case," which "may not be counted against the State." *Shaw* at 889-90.

As to the reason for the delay, "different weights should be assigned to different reasons." *Barker*, 407 U.S. at 531; *accord Dragoo*, 96 S.W.3d at 314.  "[I]t is improper for the prosecution intentionally to delay 'to gain some tactical advantage over [defendants] or to harass them.'" *Barker* at 531 n.32 (quoting *Marion*, 404 U.S. at 325) (alteration in *Barker*).  "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the" State.  *Barker* at 531; *accord Whitfield v. State*, 137 S.W.3d 687, 690 (Tex. App. – Waco 2004, no pet.). "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily . . . ." *Barker* at 531; *accord Zamorano*, 84 S.W.3d at 649.  "Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay." *Barker* at 531.

As to the defendant's assertion of the right, "the defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531-32; *see Zamorano*, 84 S.W.3d at 651. "[B]arring extraordinary circumstances," courts "[s]hould be reluctant indeed to rule that a defendant was denied th[e]" Sixth Amendment "constitutional right on a record that strongly indicated . . . that the defendant did not want a speedy trial." *Barker* at 536. "[T]he failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.* at 532; *Zamorano* at 651. "[A] defendant's failure to make a timely demand for a speedy trial indicates strongly that he did not really want one and that he was not prejudiced by not having one." *Shaw*, 117 S.W.3d at 890; *accord Harris v. State*, 837 S.W.2d 949, 957 (Tex. Crim. App. 1992). "Furthermore, the longer the delay becomes, the more likely it is that a defendant who really wanted a speedy trial would take some action to obtain one." *Shaw* at 890; *accord Dragoo*, 96 S.W.3d at 314. Moving for "a dismissal instead of a speedy trial weakens [a speedy trial] claim because it shows a desire to have no trial instead of a speedy trial." *Zamorano* at 651 n. 40 (quoting *Parkerson v. State*, 942 S.W.2d 789, 791 (Tex. App.–Fort Worth 1997, no pet.)) (alteration in *Zamorano*).

As to the fourth factor, the prejudice to the defendant resulting from the delay, such prejudice "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532. The Supreme "Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.*; *accord Shaw*, 117 S.W.3d at 890. Of those interests, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker* at 532; *accord Shaw* at 890.

As to the length of delay here, the length in question stretches from Jenkins's arrest on January 7, 2005, until March 20, 2006, when Jenkins's trial that ended in a verdict began, about fourteen and one half months later. That delay is sufficient to trigger the [*Barker*] analysis, but extends little beyond the minimum required to do so. A delay of thirteen months is "not extraordinary." *Harris*, 827 S.W.2d at 957. The trial court could have found that the length of the delay was not extraordinary. If this factor weighs against the State, it does not do so heavily.

As to the reasons for the delay, the State pointed, first, to the trial court's docket. In September 2005, when Jenkins's case was first set for trial, the court tried a defendant who had been in jail awaiting trial at least four months longer than Jenkins. On the trial court's next criminal trial setting, in October 2005, the court tried a defendant for capital murder. *See* TEX. PENAL CODE ANN. § 19.03 (Vernon Supp. 2006). On the trial court's next criminal setting, in November 2005, the trial court began trial of another capital-murder defendant, whose trial resulted in mistrial.

10

In the trial court's next criminal trial setting, December 2005, the trial court retried the capital-murder defendant whose trial had resulted in mistrial. In the trial court's next criminal trial setting, in January 2006, the trial court began Jenkins's first trial, which ended in mistrial. In February 2006, the trial court began Jenkins's second trial, which also ended in mistrial. In March 2006, the trial court began Jenkins's third trial, in which the jury returned a verdict of guilt. The State and Jenkins also pointed to the motion to withdraw of Jenkins's first appointed attorney, in which Jenkins joined. Delay in appointing replacement counsel was caused by Jenkins's representation to the trial court that Jenkins had retained counsel. The trial court could have found that the reason for the delay was largely the neutral reason of the court's docket, and could have found that Jenkins's conduct caused a significant part of the delay. If this factor weighs against the State, it does not do so heavily.

As to Jenkins's assertion of the speedy-trial right, he failed to assert it for ten and one half months after his arrest. Jenkins then urged a motion to dismiss, of the overruling of which he now complains, instead of a motion for speedy trial. The trial court could have found that Jenkins did not want a speedy trial, but wanted a dismissal instead. This factor weighs against Jenkins.

As to prejudice, Jenkins pointed to the death of his mother while he was awaiting trial, and argued that only his mother could have testified as to Jenkins's criminal history and thus to Jenkins's eligibility for community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 4(b)(3), (e) (Vernon 2006). The State pointed to other relatives who might have testified to Jenkins's criminal history. The trial court could have found that Jenkins did not show prejudice. This factor weighs against Jenkins.

On balance, the factors weigh against finding a speedy trial violation. We overrule Jenkins's third issue.

*Jenkins v. State*, No. 10-06-00132-CR at 4-10. This rejection of Jenkins' speedy trial claim is not contrary to or an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.

A defendant has a constitutional right to a speedy trial. U.S. CONST. Amend VI. Determining whether that right has been violated requires a balancing of the four factors identified by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): (1) length of delay; (2) reason for delay; (3) assertion of the right; and (4) prejudice to the accused. The Texas Court of Appeals cited to *Barker*

and the weighed the four *Barker* factors.  The Texas Court of Appeals' determination that Jenkins was not deprived of his constitutional right to a speedy trial, and its balancing of the four *Barker* factors, was not objectively unreasonable.

The delay at issue, as found by the Court of Appeals, was sufficient to trigger the speedy trial analysis, but was not extraordinary.  *See Doggett v. United States*, 505 U.S. 647 (1992) (eight and a half year delay was extraordinary); *United States v. Cardona*, 302 F.3d 494 (5th Cir 2002) five year delay was extraordinary).  In addition, the reason for the delay, overcrowded court dockets, and the change in Jenkins' counsel, was not generally attributable to the State.  The manner and delay in asserting his right to a speedy trial weighed against Jenkins.  The final factor, prejudice to Jenkins, was found by the Court of Appeals to weigh against Jenkins and his speedy trial claim.  It is with respect to this final factor of the *Barker* analysis that Jenkins most pointedly disagrees.  According to Jenkins, he was prejudiced by the delay in that he was anxious and concerned, and was, due to the death of his mother, unable to present her as a witness during the punishment stage of the trial.

In support of his argument that the Court of Appeals' assessment of the prejudice factor was flawed, Jenkins relies on the dissenting opinion of Justice Bill Vance, one of the justices on the panel that affirmed his conviction, who wrote:

> The defendant must make a prima facie showing of prejudice.  *Whitfield*, 137 S.W.3d at 691.  Once that is done, the burden shifts to the State to show that no serious prejudice occurred beyond that from an ordinary, inevitable delay. *Id.*
>
> The analysis of this factor is the crux of my disagreement with the majority. If "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify" and "the burden shifts to the State to show that no serious prejudice occurred beyond that from an ordinary, inevitable delay," then this factor must be weighed in Jenkins's favor.
>
> At the hearing on the motion, Jenkins introduced the death certificate of his mother, who had died on December 23, 2005, while he was incarcerated and awaiting

12

trial. She was, he says, his witness at a possible punishment hearing to prove that he had not been convicted of a felony in Texas or any other state. He said that he suffered "mental strife" in losing his mother while incarcerated. He also points to a letter he wrote to the trial judge in June of 2005 as reflecting his anxiety and concern by specifically referring to his mother's illness and his need to support her and his newborn child and take his mother to doctor's appointments. The letter also relates that he had a job awaiting his release. Thus, he made a prima facie showing of prejudice. *See id.*

Addressing the three interests, the State acknowledges that Jenkins was incarcerated from arrest to trial. The State says that, although the June letter constitutes "some evidence" of anxiety over pending charges, proof of anxiety and concern over the delay is missing. Concerning the third interest, the State says that Jenkins has not shown that his mother's testimony was "exculpatory or otherwise beneficial," and that an aunt testified about his eligibility for probation. The State urges that the prejudice factor weighs heavily against Jenkins.

The State concedes that Jenkins was in jail from arrest to trial and that the evidence shows "some anxiety" due to the delay. Did the State show that no serious prejudice occurred beyond that from an ordinary, inevitable delay? I believe that it did not. The defendant– not the State– gets to choose which witnesses to call on his behalf at punishment. Thus, I disagree with the State and the majority. This factor weighs in Jenkins's favor.

*Analysis*

This is a difficult and sensitive balancing process. The first factor, length of the delay, triggers a review of the remaining factors and established presumptive prejudice. The second factor, reasons for the delay, weighs slightly against the State, and the third factor, timeliness of the demand, is neutral. Thus, because under the fourth factor, the most important factor, the burden shifted to the State to show that no serious prejudice occurred beyond that from ordinary, inevitable delay, I am persuaded that the issue should be sustained. The undisputed facts that Jenkins was incarcerated for over a year awaiting trial without much activity in his case, that he expressed anxiety and concern while awaiting trial, and that his case at punishment was impaired to some degree when his mother died four months before trial, all demonstrate that in the balancing process the fourth factor is sufficient to require a finding of a violation of the right to a speedy trial.

*Jenkins v. State*, No. 10-06-00132-CR, Dissenting Opinion, at 7-9.

Neither Jenkins' arguments, nor Justice Vance's dissenting opinion support a conclusion that

the Texas courts' rejection of Jenkins' speedy trial claim was unreasonable, or was based on an

unreasonable application of clearly established Federal law. The record shows that at the hearing on Jenkins' motion to dismiss Jenkins argued that he experienced mental strife due to the charges and the delay of his trial, and that his mother, who would have been called to testify at the punishment stage in support of a request for probation, had recently died. The State, in response, pointed out that Jenkins had other family members who could testify at a possible punishment hearing about his eligibility for probation, and that Jenkins' aunt did so testify. Upon this record, it was not unreasonable for the Texas courts to conclude that Jenkins was not prejudiced or harmed by the delay. In addition, it was not unreasonable for the Texas courts to conclude, on balance of the *Barker* factors, that the delay in Jenkins' trial did not rise to a violation of his Sixth Amendment right to a speedy trial. Therefore, under § 2254(d), no relief is available on this claim.

###### 2.      Void/Invalid Indictment Claim (claim 2)

In his next claim, Jenkins maintains that the indictment was void and invalid because it was returned by a grand jury whose term had expired. In addition, Jenkins complains that the indictment should have been dismissed because he was not tried in a timely fashion.

To the extent Jenkins is raising a speedy trial claim with his allegation that the indictment was invalid and/or void, that claim was addressed above. As for Jenkins' complaint about the indictment and the expired term of the grand jury, that claim, which is premised on Article 27.08 of the Texas Code of Criminal Procedure, presents an issue of state law, *see Johnson v. Puckett*, 930 F.2d 445, 447 (5th Cir.), *cert. denied*, 502 U.S. 890 (19991); *McKay v. Collins*, 12 F.3d 66, 69 (5th Cir.), *cert. denied*, 513 U.S. 854 (1994), which is not cognizable in this federal habeas corpus proceeding. *Yohey v. Collins*, 985 F.2d 222, 228-229 (5th Cir. 1993). Therefore, to the extent the Texas courts rejected this claim on the merits, that rejection is not contrary to or an unreasonable application of

clearly established Federal law, as determined by the Supreme Court of the United States.   No relief is available on this claim under § 2254(d).

### 3.     Ineffectiveness Claims (claims 3a and 3c)

In his final claim(s), Jenkins faults counsel for failing to raise the issue of self-defense, and for failing to challenge the validity of the indictment.  The Texas Court of Appeals rejected both claims when it denied Jenkins' state application for writ of habeas corpus on the following findings of the state trial court:

4.      As to Applicant's claim of ineffective assistance, Applicant failed to show deficient performance, much less harm, in the following areas:

- • The alleged failure to effectively consult with Applicant;
- • The alleged failure to file and execute pro se motions;
- • The alleged failure to file[] a motion to withdraw, which was granted;
- • The alleged failure to assert right to bail reduction;
- • The alleged failure to assert right to speedy trial;
- • The alleged failure to assert waiver of indictment for failure to timely prosecute;
- • The alleged failure to show interest in Applicant's case and consult with him because counsel was engaged in another high profile case.

5.      Both Phil Banks and Kyle Davis provided the effective assistance of counsel in the instant cause.

*Ex parte Jenkins*, Application No. WR-70,330-01, at 135.  This rejection of Jenkins' ineffectiveness claims is not, upon this record, contrary to or an unreasonable application of clearly  established Federal law, as determined by the Supreme Court of the United States.

Claims of ineffective assistance of trial counsel are generally measured by the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  To be entitled to relief on an ineffective assistance of counsel claim, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had.  *Id*. at 687.  Deficiency

15

is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id.* at 687-689. The prejudice element requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A petitioner has the burden to prove both the deficiency and the prejudice prongs in order to be entitled to relief. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

Under *Strickland*, judicial scrutiny of counsel's performance is highly deferential and a strong presumption is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*), *cert. denied*, 509 U.S. 921 (1993). In order to overcome the presumption of competency, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong of *Strickland*, a petitioner must be able to establish that absent his counsel's deficient performance the result of his trial would have been different, "and that counsel's errors were so serious that they rendered the proceedings unfair or the result unreliable." *Chavez*, 193 F.3d at 378. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

Here, Jenkins made no showing in his state application for writ of habeas corpus, and has made no showing here, that he had a viable theory of self-defense to present, or that counsel could have presented a viable challenge to the indictment. As such, no relief is available to Jenkins under § 2254(d) on his claim that counsel was ineffective for failing to raise self-defense as a defensive theory and his claim that counsel was ineffective for failing to challenge the indictment.

16

**V.    Conclusion and Recommendation**

Based on the foregoing and the conclusion that Jenkins' claims are either unexhausted and procedurally barred from review or that no relief is available on the merits of his claims under § 2254(d), the Magistrate Judge

RECOMMENDS that Respondent's Motion for Summary Judgment (Document No. 15) be GRANTED, that Petitioner's Federal Application for Writ of habeas Corpus (Document No. 1) be DENIED, and that this § 2254 proceeding be DISMISSED WITH PREJUDICE.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.   Within 10 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the ten day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996).   The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 28th  day of January, 2010.

Frances H. Stacy
United States Magistrate Judge